# EXHIBIT A

batch 600
CT#159319398
$250
1-24-22

RICHARD M. ZELMA
Richard M. Zelma, *Pro Se*
09/11/21940 Blanch Avenue
Norwood, New Jersey 07648
TCPALAW@optonline.net
Tel: 201 767 8153

| | |
|---|---|
| **Richard M. Zelma** <br><br> **Plaintiff** <br><br> **Vs.** <br><br> **NORTH STAR INSURANCE ADVISORS,** <br> **and AARON B. EIDSON** <br> **individually,** <br> **and** <br> **Does' (1-10 and ABC Corporations' (1-10); each acting individually, in concert or as a group.** <br><br> **Defendants'** | **SUPERIOR COURT OF NEW JERSEY** <br><br> **BERGEN COUNTY** <br><br> **LAW DIVISION** <br><br> **Docket No.:** <br><br> **PLAINTIFFS COMPLAINT FOR STRICT LIABILITY STATUTORY DAMAGES for VIOLATIONS of THE TELEPHONE CONSUMER PROTECTION ACT; TREBLED DAMAGES; and PERMANENT INJUNCTIVE RELIEF** |

## I.   INTRODUCTION

Plaintiff, Richard M. Zelma, by way of Complaint as against Defendants, says as follows:

This suit is brought pursuant to applicable authorities; 47 U.S.C. §227(c)(5)(C) (TCPA), which prohibits the initiation of unsolicited telemarketing calls to a telephone number registered on the Federal No-Call-List, administered by the Federal Trade Commission.

Furthermore: the Code of Federal Regulations, 47 <u>C.F.R.</u> §64.1200(d), requires any telemarketer to provide their requisite identity during any telemarketing campaign.

Additionally: this suit is brought under the New Jersey State no-call-law, which registry mirrors the FTC list and prohibits telemarketing calls into the State.

1.      Both laws prohibit any call to those who registered their numbers with the FTC no-call-list, where such calls are initiated either manually and/ or through the use of an automated telephone dialing system (ATDS), including auto-speed dialers, predictive dialers and auto-dialing platform systems or any method that a reasonable person would define as dialing a phone number to a specific party, absent human intervention.

2.      Auto-Dialers can be considered support platforms, which have the capacity **if needed**, to store or produce telephone numbers, harvest numbers without the consent or knowledge of a subscriber; acquire numbers algorithmically and surreptitiously on a consumer and capable of calling such numbers either randomly, sequentially and /or from a stored database at a time decided by a user.

3.      As set forth below, the Defendants called Plaintiff's land-line telephone TWELVE [12] times <u>at minimum</u>, and did so without prior express written consent. (The exact amount of calls will be determined through continuing discovery)

4.      As alleged herein, upon Plaintiffs information and belief, the

defendants and each of them systematically initiated their calls via an Automatic Telephone Dialing System (ATDS), to Plaintiffs telephone number connected to a land-line network, where said number remains listed with the federal and (NJ) State no-call-list since inception, 2003.

5.      Through their TWELVE [12] calls, the defendants were intent to solicit Plaintiff, albeit prohibited, with the motive to offer their services for final expense insurance.

## II.   <u>PARTIES</u>

6.      Richard M. Zelma (hereinafter, "**Plaintiff**" or "Zelma"), is a natural person and senior citizen, residing at 940 Blanch Avenue, in the Borough of Norwood, Bergen County New Jersey 07648 and the subscriber to the subject phone number.

7.      As used herein, any reference  to "Plaintiff" shall mean Plaintiff Richard Zelma.

## III. <u>DEFENDANTS</u>

8.      Upon information and belief, North Star Insurance Advisors, (Hereinafter "North Star", "NSIA"  or "Defendant") is a corporation formed under the laws of the State of Missouri.

9.      Upon information and belief, Aaron B. Eidson, (Hereinafter "Eidson" or "Defendant") is identified as the principal, managing member, director and

founder of North Star, listing his principal place of business at 100 Mall Parkway, Suite 101, Wentzville, MO 63385.

10.      Eidson is listed as the registered agent and may be served personally at the company's location,  100 Mall Parkway, Suite 101, Wentzville, MO 63385.

11.      Upon information and belief, Aaron B. Eidson is the decision maker for North Star, having authority to control, direct, plan and place into action, any marketing plan to promote the services of his company.

12.      Eidson, creates, structures, organizes and hires "others" including call centers to aid in implementing his promotional plans for his company.

13.      Unless specific liability is directed towards one entity, Defendants North Star and Eidson are each considered one and the same for purposes of this litigation and the allegations and their commonality thereto.

14.      Upon Plaintiffs information and belief, any unconfirmed various and other names if used herein, were names freely given by agents during the course of Plaintiffs investigation and if applicable, are to be considered among the Doe Defendants.

15.      Plaintiff sues Eidson individually under the responsible corporate officer doctrine.

16.      Eidson purposely and knowingly guided his company's marketing calls into the forum state and directed, controlled and instructed his agents in the course of conduct which resulted therefrom.

17.      Eidson knowingly or willfully allowed and permitted the prohibited

calls to be initiated to Plaintiffs landline while knowing or consciously avoided knowing Plaintiffs number was listed on the FTC no call list since 2003.

**18.**     Eidson, personally profits from the leads he generates and sells, whether individually obtained or through his agents, employees and call-centers.

**19.**     Eidson, acting on his own free will, irrespective or his clients offerings, made a calculated decision to commence with the unlawful activity defined and described herein, to his benefit and own financial gain and is jointly and severally liable for each of the violations as set forth herein.

## IV. JURISDICTION AND VENUE

**20.**     The facts giving rise to this Complaint had their primary effect in the County of Bergen, State of New Jersey.

**21.**     The Defendants have not registered with New Jersey as required to do so as a business intending to solicit their products or services into the State and therefore at the time of their calls, violated the Rules set forth by the New Jersey Department of Law & Public Safety.

**22.**     This Court has general, specific and subject matter jurisdiction under authority of the TCPA, 47 U.S.C. §227(c)(5)(C) as well as N.J. Rev. Stat. §56:8-128 (2013), in that the Defendants repeatedly and purposely violated those proscriptions by initiating telemarketing calls to solicit Plaintiff in this County and State.

**23.**     As further set out below, the defendant's and each of them made a conscious decision; purposely situating themselves in the Forum State, directing

prohibited activities into the Forum State, soliciting business into the Forum State, towards Plaintiff, deliberately, willfully or knowingly initiating marketing calls to Plaintiffs phone, annoying his household, consuming his time, while unlawfully soliciting their products and services, in violation of federal and state laws for their own financial gain.

## V.  **ACTS OF AGENTS**

**24.**       Whenever and wherever it is herein alleged that the Defendant[s], either individually, in concert with others or as a group, did any act defined, described or set forth below, it is meant the Defendant[s] performed, caused to be performed and/or participated in the act[s] and/or, that Defendants officers, owner[s], member[s] and/or managing members, partner[s], employees, contractors, successors, assigns, predecessors, affiliates, or 'other' agent[s], performed or participated in those acts on behalf of, for the benefit of, and/or under the authority or direction of the Defendant[s] and each of them under Agency.

## VI. **HISTORIC and FACTUAL BACKGROUND**

**25.**       Plaintiff subscribes to land-line telephone number [201] 767 8153 for over 40 years.

**26.**       Plaintiffs phone number referenced above remains listed on the FTC and New Jersey no-call-registry since inception, 2003.

**27.**       Plaintiff never inquired about the defendants' products or services.

28.      Plaintiff never heard of the defendants, hence, never visited their web-site prior to the within dispute.

29.      Plaintiff does not need or want the defendants' products or services.

30.      Plaintiff did not, does not and never had any business relationship with the Defendants.

31.      Plaintiff never provided either or any of the Defendants express written consent, implied consent, unanimous consent or informed consent to solicit him by telephone.

32.      The defendants agents never asked for consent-to-call, even after their first prohibited call.

33.       The defendants agents never provided Plaintiff with full disclosure for the nature of their calls or the[ir] purpose to solicit him during the[ir] very first prohibited call.

34.      Throughout the defendants repeated calls, the agents never stated they would repeatedly call Plaintiff, but they did.

35.      The defendants calling scripts directed their agents to read, either verbatim or loosely imply, the call was to inform Plaintiff of some law that provided final expense insurance.

36.      In the process of each call asking for "Milton", (the pseudonym Plaintiff used *__Ut infra,__* to specifically identify this defendant) the callers would claim to be "*following up to try and connect him with a licensed agent*."

37.     During the repeat[ed] calls where an insurance agent was unavailable, Plaintiff did tell the defendants agent not to call again.

38.      Plaintiff never provided the Defendants his phone number.

39.     The Defendants and each of them, initiated, authorized, directed, controlled, made and stood to profit from each or any of the subject calls, which were not made for an emergency purpose or by mistaken act.

40.     Even after repeatedly being told not to call, the defendants calls continued.

## VII.     FACTUAL ALLEGATIONS

41.     As set forth above, Defendants Eidson, North Star and the Doe defendants, either through contract, agreement, plan, purpose, motive and/or intent, developed a scheme and purposely implemented that scheme into a plan to solicit their product or service through telemarketing, using either their own call-center[s] or contracting with off-shore call-centers, where they fulfilled their plan by willfully or knowingly commenced to initiate the unlawful calls.

42.     Acting in concert with the yet unidentified 'DOE' defendants, Eidson fabricated his plan to "hopefully" isolate himself and his company from liability for knowingly violating the TCPA.

43.     On October 2013, the State of Missouri expired Edison's previous LLC identified as; Final Expense TeleSales, which ironically was located at his same current location, 100 Mall Parkway, Suite 101, Wentzville, MO 63385.

44.    Upon information and belief, Eidson owns and operates the defendant business,  North Star Insurance Advisors. (NSIA)

45.    While the name implies and self described as an advisory firm, Eidsons defendant business, 'NSIA' does not advise!

46.    Upon information and belief, NSIA is in the business of acting as a vendor of insurance leads, simply brokering final expense qualified prospects.

47.    Upon information and belief, Eidson elected to revamp his organization by employing, contracting with, purchasing, directing and or operating an overseas call-center or centers to acquire or generate leads for final expense insurance, transfer or call-forward those leads to licensed agents he employees in the States to qualify that prospect as a <u>clean lead,</u> then sell that lead to the appropriate administrator.

48.    Upon information and belief, The Defendants used off-shore "lead generating telemarketers" to prevent consumers from discerning the callers identity and to deflect the requirements of the TCPA.

49.    By restructuring the mechanics of his company, knowingly creating and establishing nefarious methods to solicit consumers, especially the elderly, Eidson knew or should have known that his acts would violate the TCPA as well as State telemarketing law.

50.    By utilizing off shore call-centers, the defendants created a way around federal mandatory compliance and believed that would aid to distance themselves from liability and purposely avoid knowing (if asked) how the calls

were initiated or by who.

**51.**    Upon information and belief, Eidson contracts, owns, operates, directs or has authority over various call-centers to initiate the subject calls.

**52.**    Pending continued discovery, it will be determined if Eidson provided the calling lists to his callers, from where and who he acquired the list, or, if he permitted his callers to source their own list.

**53.**    Upon information and belief, those call-centers initiated the subject calls where Eidson turned a blind eye as those agents made thousands if not millions of prohibited calls to unsuspecting consumers, including Plaintiff, to sell questionable Final Expense Insurance.

**54.**    Eidson knowingly permitted his call-center[s] to spoof their numbers. He permitted his call-centers to use a nonexistent generic business names such as, American Benefits or Senior Benefits, generic names that could not be located.

**55.**     Eidson instructed the agents to introduce themselves using American personal names, such as Paul, Steve, Adam etc., during their formal greeting.

**56.**    Eidsons agents were directed not to divulge their true business name or location but only respond, they were "located in Texas or Florida".

**57.**    Plaintiff never feigned interest in the actual product. The callers attempting to transfer each call, were so aggressive, if Plaintiff remarked "*yes, I'd like to know more about who placed this call and whose behind it*", the caller immediately attempted to transfer the subject call.

58.     In other instances, when Plaintiff asked why they refuse[d] to provide the name of their call-center or location, some agents response was; "*their contract does not allow them to do that*", adding, "*they could be fired*!"

59.     In some of the calls, the callers told Plaintiff the[ir] licensed agent would provide "all that information" when the[ir] call was transferred [to that agent], but only if Plaintiff had interest in the product being offered.

60.     In the course of what was believed to be Eidsons first call, his callers never knew the name of the party they were calling!

61.     To differentiate between various robo callers and in an effort to track and positively identify this particular defendant, Plaintiff used an assumed name, the pseudonym "Milton Mendelbaum", offering such name to the agent initially calling and soliciting.

62.     As the subject calls continued, the calling agents would specifically ask to speak with "Milton Mendelbaum" or "Milton".

63.     When Plaintiff acknowledged "*this is he*" the callers, some whose thick accent was barely intelligible, introduced themselves with an American name, claimed he showed prior interest in Final Expense Insurance, telling Plaintiff he was about to get a good deal on insurance and asked plaintiff to hold the line while they/he transferred the call to a "licensed agent."

64.     Often the agents transferred call could be heard reaching a busy signal, or a continuous ring or no answer at all.

65.     At other times, the transferred call would be answered then

immediately disconnected. When that occurred, the calling agent would comment "you must be on a no call list!"

66.     During a call when an agent commented; "*you must be on a no call list*", Plaintiff confirmed that, giving that agent notice to place him on their company specific no-call-list and not to call again. In those instances, the agent was unresponsive and would simply hang up!

67.     This series of calls, made over several months was eventually and successfully transferred on June 29, 2021 at or about 12:27 PM to licensed agent, Sara M. Padgett. [1]

68.     Padgett greeted plaintiff, providing her license number showing her employers identity as well as the identity of the insurance administrator, attached herewith and made a part hereof as **EXHIBIT-1**.

69.     Padgett confirmed she works for North Star and implied she receives leads generated through North Star.

70.     As with previous calls, the defendants callers used 'local-spoofed' caller-ID to intentionally deceive the called parties into thinking a neighbor was calling. The June 29 subject call displayed a non-working number of [201] 761-6651.

71.     Working in concert with various call-centers, North Star and Eidson generate targeted leads of senior citizens, allowing their licensed agents to then receive those leads through a "hot-transfer" process.

---

[1]            Padgett is not a Defendant or party at this time.

72.     If the agent makes the sale with the called party, that lead is then "qualified" and sold to an administrator actually providing the policy.

73.     In this scenario, the administrator disclosed by the agents license was Pioneer American Insurance Company.[2] *Id.*

74.     Commencing on or about April 30, 2021 through August 12, 2021, plaintiff received, attempted to answer and later identified **TWELVE [12]** incoming calls from the defendant. **[EXHIBIT-2]**

75.     When those numbers were called back during normal business hours, the calls went nowhere, reaching a phone company recording stating the number dialed was not in service.

76.     The defendants calls did not stop until 30 days after notice was made to defendants counsel.

## VIII.     THE CALLS CAME THROUGH NORTH STAR

77.     Upon  information  and  belief,  Eidson  designed  his  business  to  have "others" field consumers from specific data bases, seeking consumers who might qualify for final expense insurance, thus generating leads he could sell.

78.     The lead generating industry is developed with various agreements to avoid cross-selling, duplicate leads and lead sharing as well as stale leads.

79.     As a way to secure his own leads, it's believed Eidson contracted with a specific call-center or centers who would only source leads for NSIA and no other entity.

---

[2]           Pioneer American Insurance Company is currently not a Defendant at this time.

80.     By doing so, Eidson was guaranteed that only his call-centers and no random or rogue call-center would initiate calls for him, thereby maintaining the security where he only received leads from those he contracted with.

81.     In support of this theory, in the defendants first call, Plaintiff used a pseudonym which came back in subsequent calls where the agents asked for that name in each call.

82.     Furthermore, the Eidsons caller scripts were significantly different in terms of their spiel to that of the unrelated callers offering the same or similar product.

83.     In everyone of the calls soliciting North Star, the callers never asked for consent to call back as they were always quick to transfer the call to a licensed agent.

84.     The Federal Communication Commission ("FCC") is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

85.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

86.     In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. ***Id.*** (specifically recognizing "on

behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

87.         On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that entities such as North Star Insurance Advisors may not avoid liability by outsourcing telemarketing:

 [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

   *May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

## IX. <u>VIOLATIONS OF LAW</u>

88.         Upon  information and belief, the defendants do not subscribe to the Federal Trade Commissions registry of do-not-call numbers.

89.         Upon Plaintiffs information and belief, the defendants do not subscribe to the New Jersey registry mirrored with the Federal Trade Commissions, as the NJ no-call-law.

90.         The defendants and each of them initiated in excess of twelve (12) calls as defined and described above and did so willfully, knowingly and maliciously in violation of the TCPA; the New Jersey no call law, and intentionally violated the privacy rights of plaintiff.

91.     The TCPA defines a telemarketing/solicitation as;

 "The term "telephone solicitation" means the initiation of a telephone call or message for the purpose **of encouraging** the purchase or rental of, **or investment in,** property, goods, or **services,** which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship,. . ".

92.     The Defendants engage in soliciting their services through telemarketing and yet, neither of them have a Subscription Account Number (SAN) to qualify as having subscribed to the Federal no-call registry required by law. (16 C.F.R. §310)

93.     The defendant's employees, call-centers or agents are not trained in the use of a company specific no-call list as required by law, and upon information and belief, it's alleged they don't have one.

94.     The defendants do not have procedures in place to "effectively" prohibit unwanted calls and it's Plaintiffs opinion they knowingly chose not to.

95.     In the absence of mandatory minimum standards and regulatory compliance procedures defined above, which (absence) caused the initiation of prohibited, unwanted and continued calls to Plaintiff, indicates a significant void in the defendants "effective" no-call policies and procedures.

96.     Each call received was a violation of plaintiff's registration on the FTC no-call-list.

97.     Each call received thereby violated the terms of the TCPA; (47 U.S.C. §227(c))

**98.**      Each call received violated the provisions of the New Jersey no call law; (<u>N.J.A.C.</u> §13:45D-3.1)

**99.**      Plaintiffs no call request, made to several callers, fell on deaf ears, was not recorded by the call-agents required by law, indicating a lapse or no training in Compliance procedures.

**100.**      Each call received violated the provisions 47 <u>C.F.R.</u> § 64.1200(d)(4), by failing to identify "the individual caller, company name, and a contact telephone number or address."

"FCC regulations require telemarketers to implement the following standards: Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges."

**101.**      As further noted: 47 <u>C.F.R.</u> § 64.1200(d) is expressly addressed to "all telemarketing calls, whether prerecorded or live, whether made individually or through a system." (*Lifestation,* 2021 WL 5358876, at *15.)

**102.**      The Defendants are therefore liable along with the currently unnamed Doe Defendants, for violating the terms of  47 <u>C.F.R.</u> § 64.1200(d)(4).

**103.**      At all times relevant, the Defendants and each of them, purposely, willfully or knowingly initiated the prohibited calls at issue to Plaintiff directly, or caused the initiation of those calls to Plaintiff and delivered said calls to Plaintiff which were strictly prohibited, purely commercial in nature, to benefit the Defendants' own financial gain.

**104.** As alleged herein, each of the defendant's willful, purposeful or reckless disregard of the law; knowingly implementing and initiating unlawful calls; violated the TCPA as well as the New Jersey no-call-law, where each such call was made with prior knowledge, participation, motive, intent, acceptance and approval, directed by the defendants to the benefit of each of them.

**105.** At all times relevant, the Defendants and each of them failed or refused to register their intent to solicit into the State with the New Jersey Division of Consumer Affairs. [N.J.S.A. §§56:8-121(a)(&(b)]

## X. THIS COURT'S POWER TO GRANT RELIEF

**106.** 47 U.S.C. §227(b)(3)(A) empowers this Court to grant injunctive and other ancillary relief to prevent and remedy any future violation by the Defendants of any provision of law enforced by the FCC that protects Plaintiff.

**107.** Plaintiff will suffer continual harassment along with substantial emotional distress and abuse that will annoy and alarm his household if the Defendants are permitted to continue to engage in their questionable practices, if Permanent Injunctive Relief is not granted.

**108.** Accordingly, Plaintiff has a cause of action against the Defendants and hereby seeks relief under the TCPA's Strict Liability statutory damage award along with applicable State Law claims as well as Permanent Injunctive Relief pursuant to the foregoing, against the Defendants and each of them.

### XI. COUNT ONE
### VIOLATIONS OF 47 U.S.C. §227(c)(5)(C)
### WILLFULLY OR KNOWINGLY SOLICITING A

## NUMBER ON THE FTC NO-CALL-LIST

*109.*     Plaintiff repeats, re-alleges and incorporates by reference Paragraphs

one through one hundred-eight as if set forth in full at length.

*110.*     On the dates defined on Plaintiffs Call Detail Report as set forth

herein from his carrier, **[Plt. EX-2]** evidence Plaintiffs receipt of TWELVE [12]

calls from the Defendants that were initiated to his land-line phone.

*111.*     The defendants repeatedly initiated those calls to a number that had

been placed on the FTC no-call-registry since inception, 2003. ***Id.***

*112.*     Moreover, Plaintiffs no-call-request was further enhanced by

registering his numbers with the New Jersey no-call-list in 2004, which mirrors

the federal registry.

*113.*     The Defendants knowingly or willfully violated the TCPA as well as

the New Jersey no-call-law when they intentionally resorted to call and solicit

Plaintiff as set forth herein and initiated their calls to Plaintiff without prior

express written consent to do so.

*114.*     As set forth above, the defendants knowingly solicited into New

Jersey, to Plaintiff while they were not registered with the Department of Law

and Public Safety, New Jersey Division of Consumer Affairs. ***Id.***

*115.*     The defendants foregoing acts were knowingly made. The defendants

knew or consciously avoided knowing that their calls were in violation of US

law, but willfully chose to initiate the calls anyway.

116.     Each of the Defendants calls were <u>not emergencies</u> but purposely initiated to plaintiff for marketing purposes and violated the proscriptions of 47 U.S.C. §227(c)(5)(C).

117.     The TCPA states in relevant part:

"47 USC <u>§</u>227;

. . .
. . .

Protection of subscriber privacy rights

(5) Private right of action. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

(A). . .
(B). . .
(C) both such actions.

"It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

118.     The defendants did not implement or establish a no-call-policy; did not register with the State of New Jersey to solicit consumers in the forum state and did not purchase a no-call subscription from the FTC thus exposing themselves to the proximate cause.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

Award Plaintiff strict liability statutory trebled damages of

$1,500.00 for each of the TWELVE [12] calls material to Count One for a total of Eighteen Thousand Dollars ($18,000.00).

**XII.      COUNT TWO**
**VIOLATIONS OF 47 C.F.R. § 64.1200(d)(4)**
**REPEATED FAILURE OR REFUSAL TO MEET**
**IDENTIFICATION REQUIREMENTS**

**119.**     Plaintiff repeats, re-alleges and incorporates by reference Paragraphs one through one hundred-eighteen as if set forth in full at length.

**120.**      On the dates set forth herein, evidenced by Plaintiffs Call Detail Report **[Plt. EX-2]** Plaintiff received and answered TWELVE [12] calls from the Defendants that were initiated to his land-line phone.

**121.**      When asked, the defendants callers continually refused to provide the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.

**122.**      Instead, they replied; *"the licensed agent will give you all that information once we connect you!"*

**123.**      47 <u>C.F.R.</u> §64.1200(d) imposes that Congress clearly intended to authorize a consumer "to recover for the telemarketer's failure to institute [those] minimum procedures." *<u>Charvat v. NMP, LLC,</u>* 656 F.3d 440, 449 (6th Cir. 2011); *<u>Cordoba v. DIRECTV, LLC</u>*, 942 F.3d 1259, 1265 (11th Cir. 2019). [See also:*<u>Worsham v. Discount Power</u>*, No. RDB-20-0008, 2021 WL 3212589, at **1– 2 (D. Md. Jul. 29, 2021). (Mem. Op., ECF No. 74.)

*124.*     The Defendants and each of them did not meet the regulatory minimum standards by providing the requisite identification during each of their Twelve (12) calls as required by 47 C.F.R. § 64.1200(d)(4), thereby denying Plaintiff his right to identify each caller, and instead, was intentionally refused, given non-existent and false information.

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

Award Plaintiff strict liability statutory trebled damages of $1,500.00 for each of the TWELVE [12] calls material to Count Two for a total of Eighteen Thousand Dollars ($18,000.00).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court:

**(a)**     Award Plaintiff strict liability statutory damages trebled to $1,500.00 for each of the TWELVE [12] calls willfully or knowingly made in violation of the regulations prescribed under the TCPA, **47 U.S.C. §227(c)(5)(C),** material to Count One and as defined within the Communications Act of 1934, 47 U.S.C. §312(f)(1), administered by the FCC, for the relief sought in sub-section (a) of this Prayer, for a total of $18,000.00. **(Eighteen Thousand Dollars).**

**(b)**     Award Plaintiff strict liability statutory damages trebled to $1,500.00 for each of the TWELVE [12] calls willfully or knowingly made in violation of the regulations prescribed under the TCPA and its Code of

Federal Regulations 47 <u>C.F.R.</u> § 64.1200(d), as well as its applicable sub-section, material to Count Two, and applicable to the terms of the Communications Act of 1934, 47 U.S.C. §312(f)(1), administered by the FCC, for the relief sought in sub-section (b) of this Prayer, for a total of $18,000.00. (Eighteen Thousand Dollars).

**(c)**         Award Plaintiff costs and filing fees associated with the necessity to bring this litigation pursuant to <u>N.J.S.A.</u> §56:8-19

**(d)**         Award Plaintiff Permanent Injunctive Relief pursuant to 47 <u>U.S.C.</u> §227(b)(3)(A)

**(e)**         Award Plaintiff any Other Equitable Relief the Court deems justified to stop the telemarketing defined and described herein.

**(f)**         Plaintiff reserves the right to amend this Complaint or supplement this prayer, in the event additional violations or information surface through continuing discovery.

Respectfully submitted,

By: ***/s/ Richard M. Zelma***

   RICHARD M. ZELMA, *pro se*

   Dated: January 23, 2022

### RULE 4:5-1 CERTIFICATION

 Pursuant to the requirements of <u>R.</u> 4:5-1, I certify that the matter in controversy is not the subject of any other Court or Arbitration proceeding, nor is any other Court or Arbitration proceeding contemplated. No other parties should be joined in this action.

By: */s/ Richard M. Zelma*
 RICHARD M. ZELMA, *pro se*

 Dated: January 23, 2022


## NOTICE TO ATTORNEY GENERAL
## FOR THE STATE OF NEW JERSEY

 **NOTICE IS HEREBY GIVEN** to the Office of Attorney General for the State of New Jersey pursuant to *N.J.S.A.* *§56:8-20* of the within claims, based upon violations of the New Jersey no-call law, promulgated under the New Jersey Consumer Fraud Act.

 Furthermore: in connection with the States enforcement procedures for federal violations which effect the States no-call-law, codified at;

   47 U.S. Code § 223:

 **(a) Prohibited acts generally** Whoever—

     **(1)** in interstate or foreign communications—
       **(C)** makes a telephone call or utilizes a telecommunications device, whether or not conversation or communication ensues, without disclosing his identity and with intent to . . . harass any specific person; shall be fined under title 18 or imprisoned not more than two years, or both.;

     Plaintiff further requests "the office" to coordinate with the FCC for review, process and adjudication of violations to the foregoing US Code.


 I hereby certify that contemporaneous with the filing hereof, and in accordance with the Covid mandate, a copy of this pleading has been emailed to Director, Michelle Miller at AskConsumerAffairs@lps.state.nj.us, the aforesaid Office of Attorney General for the State of New Jersey at the New Jersey State Division of Law, Hughes Justice Complex, 25 W. Market St., P.O. Box 112, Trenton, NJ 08625-0112.

 By: */s/ Richard M. Zelma*
 RICHARD M. ZELMA, *pro se*
 PLAINTIFF

 Dated:  January 23, 2022



NAIC National Association
Insurance Commissioners

**New Jersey**
State Based Systems

## This document may serve in lieu of a Letter of Certification.

### Licensee Demographics

**Name:** PADGETT, SARA M
**Domicile State:** Florida
**Business Address:**
SANFORD, FL 32771

**NPN:** 19175719
**Domicile Country:** United States

**Resident?:** No

### License Quick View

| License Class | License Status | Status Date | Effective Date | Expiration Date |
|---|---|---|---|---|
| Insurance Producer | Active | 12/21/2020 | 12/21/2020 | 07/31/2022 |

### Phone, Email, Website

| Phone | | Email | | Website |
|---|---|---|---|---|
| **Type** | **Number** | **Type** | **E-mail** | No results found. |
| Business Primary Phone | (888) 568-4524 | Business Email | sarapadgett@northstaria.com | |

### License Information

**License Type:** Insurance Producer
**First Active Date:** 12/21/2020
**Expiration Date:** 07/31/2022

**License Number:** 3001121753
**Effective Date:** 12/21/2020
**Legacy License ID:**

**License Status:** Active
**Status Date:** 12/21/2020
**Designated Home State:**

### Line Of Authority

| Line Name | Qualification | School Code | Exam/Cert Date | Line Status | Status Date | Effective Date |
|---|---|---|---|---|---|---|
| Life | QUALIFIED AS A NON-RESIDENT | | 12/21/2020 | Approved | 12/21/2020 | 12/21/2020 |

### Designated Responsible Licensed Producer

No results found.

### DBA/Trade Name

No results found.

### Continuing Education Information

**CE Compliant:**
**CE Start Date:**
**Design/Over 25 years:**

**Compliance Date:**
**CE End Date:**
**CE Exemption Type:**

**CE Exemption Reason:**

### Appointments

| Company Name | FEIN | NAIC CoCode | License Type | Line of Authority | Appointment Date | Effective Date | Expiration Date |
|---|---|---|---|---|---|---|---|
| PIONEER AMERICAN INSURANCE COMPANY | 75-0914374 | 67873 | Insurance Producer | | 01/07/2021 | 05/02/2021 | 05/01/2022 |

### Business Entity Affiliations

No results found.

PLAINTIFF'S
EXHIBIT
1

© 2021 National Association of Insurance Commissioners. All rights reserved.

**Optimum Voice Call History Details for (201) 767-8153**
**Date Range 04/20/2021 - 08/21/2021 (selected rows)**
Total Number of Minutes: 81:33
Total Number of Calls: 30

| # | Date & Time | Type | Number | Location | Mins. |
|---|---|---|---|---|---|
| 1 | 08/12/2021 01:14 PM | Inbound | (828) 307-0465 | Sylva, NC | 0:37 |
| 2 | 08/02/2021 02:33 PM | Inbound | (702) 529-4213 | Mtcharlstn, NV | 2:03 |
| 3 | 07/19/2021 08:57 AM | Inbound | | | |
| 4 | 07/15/2021 01:01 PM | Inbound | (386) 845-9129 | Debary, FL | 0:27 |
| 5 | 07/15/2021 11:37 AM | Inbound | (201) 758-7358 | Union City, NJ | 3:15 |
| 6 | 07/14/2021 11:32 AM | Inbound | (201) 788-7585 | Ramsey, NJ | 1:01 |
| 7 | 07/02/2021 01:17 PM | Inbound | (201) 721-6725 | Jerseycity, NJ | 3:10 |
| 8 | 06/29/2021 12:27 PM | Inbound | (201) 761-6651 | Jerseycity, NJ | 52:31 |
| 9 | 06/26/2021 12:07 PM | Inbound | | | |
| 10 | 06/25/2021 08:00 PM | Inbound | | | |
| 11 | 06/24/2021 07:56 PM | Inbound | (201) 765-7354 | Rutherford, NJ | 4:03 |
| 12 | 06/22/2021 03:20 PM | Missed | | | |
| 13 | 06/22/2021 01:16 PM | Missed | | | |
| 14 | 06/22/2021 11:22 AM | Inbound | (201) 792-6621 | Jerseycity, NJ | 1:45 |
| 15 | 06/07/2021 11:43 AM | Missed | | | |
| 16 | 06/03/2021 01:26 PM | Inbound | | | |
| 17 | 05/27/2021 05:04 PM | Missed | | | |
| 18 | 05/26/2021 01:07 PM | Missed | | | |
| 19 | 05/26/2021 12:08 PM | Inbound | | | |
| 20 | 05/25/2021 05:21 PM | Missed | | | |
| 21 | 05/25/2021 05:04 PM | Missed | | | |
| 22 | 05/22/2021 01:28 PM | Inbound | (201) 743-5589 | Jerseycity, NJ | 1:19 |
| 23 | 05/22/2021 12:01 PM | Missed | | | |
| 24 | 05/21/2021 04:23 PM | Inbound | (201) 721-6819 | Jerseycity, NJ | 1:24 |
| 25 | 05/20/2021 08:20 PM | Inbound | | | |
| 26 | 05/10/2021 07:24 PM | Missed | | | |
| 27 | 05/03/2021 03:58 PM | Missed | | | |
| 28 | 05/01/2021 11:46 AM | Missed | | | |
| 29 | 04/30/2021 03:58 PM | Inbound | (201) 722-8503 | Westwood, NJ | 0:57 |
| 30 | 04/30/2021 01:33 PM | Missed | | | |

**EXHIBIT**
**2.**

Save  Print  Clear



# Civil Case Information Statement
## (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),**
**if information above the black bar is not completed**
**or attorney's signature is not affixed**

| For Use by Clerk's Office Only |
|---|
| Payment type: ☐ ck ☐ cg ☐ ca |
| Chg/Ck Number: |
| Amount: |
| Overpayment: |
| Batch Number: |

| Attorney/Pro Se Name | Telephone Number | County of Venue |
|---|---|---|
| Richard M. Zelma | (201) 767-8153 | Bergen |

| Firm Name (if applicable) | Docket Number (when available) |
|---|---|
| N/A | BER- |

| Office Address | Document Type |
|---|---|
| 940 Blanch Avenue<br>Norwood, NJ 07648 | COMPLAINT |
| | Jury Demand  ☐ Yes  ■ No |

| Name of Party (e.g., John Doe, Plaintiff) | Caption |
|---|---|
| Richard Zelma, Plt. | ZELMA vs. NORTH STAR INSURANCE ADVISORS and AARON B. EIDSON |

| Case Type Number<br>(See reverse side for listing)<br><br>699 | Are sexual abuse claims alleged?<br>☐ Yes  ■ No | Is this a professional malpractice case?  ☐ Yes  ■ No<br>If you have checked "Yes," see *N.J.S.A.* 2A:53A-27 and applicable case law regarding your obligation to file an affidavit of merit. |
|---|---|---|

| Related Cases Pending?<br>☐ Yes  ■ No | If "Yes," list docket numbers |
|---|---|

| Do you anticipate adding any parties<br>(arising out of same transaction or occurrence)?<br>☐ Yes  ■ No | Name of defendant's primary insurance company (if known)  ☐ None  ■ Unknown |
|---|---|

## The Information Provided on This Form Cannot be Introduced into Evidence.

Case Characteristics for Purposes of Determining if Case is Appropriate for Mediation

| Do parties have a current, past or recurrent relationship?<br>☐ Yes  ■ No | If "Yes," is that relationship?<br>☐ Employer/Employee  ☐ Friend/Neighbor  ☐ Other (explain)<br>☐ Familial  ☐ Business |
|---|---|

| Does the statute governing this case provide for payment of fees by the losing party?  ☐ Yes  ■ No |
|---|

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition

| Do you or your client need any disability accommodations?<br>☐ Yes  ■ No | If yes, please identify the requested accommodation: |
|---|---|
| Will an interpreter be needed?<br>☐ Yes  ■ No | If yes, for what language? |

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).**

Attorney Signature:  /s/ Richard M. Zelma

AFFIDAVIT OF SERVICE

| Case: | | Court: | County: | | Job: |
|---|---|---|---|---|---|
| BER L 000552-22 | | | | | 6632020 |
| Plaintiff / Petitioner: | | | Defendant / Respondent: | | |
| RICHARD M ZELMA | | | NORTH STAR INSURANCE ADVISOR | | |
| Received by: | | | For: | | |
| K & L Courts Process Service | | | RICHARD M ZELMA | | |
| To be served upon: | | | | | |
| RA: AARON B EIDSON | | | | | |

I, BEN LAMBERT, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address:   RA: AARON B EIDSON, 100 Mall Pkwy STE 101, Wentzville, MO 63385
Manner of Service:   Registered Agent, Feb 10, 2022, 4:26 pm CST
Documents:

Additional Comments:
1) Successful Attempt: Feb 10, 2022, 4:26 pm CST at 100 Mall Pkwy STE 101, Wentzville, MO 63385 received by RA: AARON B EIDSON. Age: 50; Ethnicity: Caucasian; Gender: Female; Weight: 160 ; Height: 5'7"; Hair: Brown
Served
Dina Hakim Director of Operations

BEN LAMBERT                      2-14-2022
                                 Date

K & L Courts Process Service
1939 Wentzville Pkwy 252
Wentzville, MO 63385
636-248-1958

Subscribed and sworn to before me by the affiant who is personally known to me.

Notary Public

Date                Commission Expires

LISA SMITH
Notary Public, Notary Seal
State of Missouri
Lincoln County
Commission # 13445876
My Commission Expires 02-06-2026